UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DEVONNE BROWN<br><br>           **Defendant.** | Case No. 25-mj-98 |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL
DETENTION OF DEFENDANT DEVONNE BROWN**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in support of its request that the defendant Devonne Brown be detained pending trial of this matter pursuant to 18 U.S.C. §§ 3142(e)(3)(E) (rebuttable presumption in favor of detention), and 3142(f)(1)(A) (crime of violence) of the federal bail statute because there is no condition or combination of conditions of release that will reasonably assure the safety of any person or the community .

On May 30, 2025, Devonne Brown ("Defendant"), was charged in a single count Criminal Complaint with Receipt of Child Pornography in violation of 18 U.S.C. § 2252(a)(2), for an offense occurring on or about April 21, 2024. Subject to a rebuttal by defendant, this case carries a presumption that no condition or combination of conditions of bond will reasonably assure the safety of the community.[1]

---

[1] 18 U.S.C. § 3142(e)(3)(E).

1

Defendant's initial appearance was held on June 2, 2025, and his pretrial detention hearing is currently scheduled for Wednesday, June 4, 2025. The Government proffers the following facts in support of its request, in addition to the bond report prepared by probation.

### Factual Background

On November 7, 2024, an employee of Block Inc. reported a suspicion of child exploitation to the National Center for Missing and Exploited Children (NCMEC) which was occurring on CashApp. The employee reported that a suspected adult's CashApp account had been reported for "grooming minors & purchasing child sexual abuse materials ("CSAM"). CashApp identified three accounts of suspected minors and reported that the adult's account had the display name "C_0se2e1msa." The CashApp employee reported that the adult's account is registered with a name of Devonne Brown, a phone number ending in -5035, an email address of devonne757@gmail.com, with a display name of "Project Impact Sports."

The employee provided the following statement regarding the suspected adult's activity (Minor Victims' names removed from the statement):

> A review was prompted by an internal referral which identified possible OCSE activity. Most of the money transfers identified in the accounts consisted of linear movement of funds sent from the subject to the minors. For example, on June 22, 2024, 2:31 AM (EST) Brown sent a $120.00 payment to Minor Victim #2 with the comment "donations light bill". Additional payment comments were examined and found to contain notations such as "lunch donation", "dinner", "lunch , gonna text u", "lunch costed extra", "hope its not too much , if it is send what u can", "donation", and "breakfast , text me on instagram message wont work". These payment comments could be indicative of grooming as sexual grooming is the action or behavior used to establish an emotional connection with a minor under the age of consent, to lower the child's inhibitions with the objective of sexual abuse. On September 20, 2024, at 9:06 PM (EST), Minor Victim #1[2] sent a payment request of $10 with the comment "******** on instagram!! text me". Additionally, on April 21, 2024, at 7:41 PM (EST), Minor Victim #2 sent a payment request of $15 to Brown with the comment "for snacks ? more photos otw ." suggesting Minor Victim #2 previously sent CSAM to

---

[2] Minor Victim #1 ("MV-1") is currently 15 years old.

2

the subject. The payment patterns combined with the inability to establish a legitimate relationship between Brown and the minors suggests that Brown was grooming the minors. Therefore, the activity is and indication the adult is grooming the minor and purchasing CSAM via the internet.

On January 23, 2025, a member of the MPD-FBI Child Exploitation and Human Trafficking Task Force ("CEHTTF") conducted a records search of commercial, open source, and law enforcement only databases to identify the reported adult CashApp account.  The member subsequently identified the defendant, Devonne Keith Brown as the likely user.  Before his arrest, Brown was employed by IDEA Public Charter School as a health and physical education teacher and track coach.  Brown is also affiliated with a youth track club called, "Project Impact Sports."

A member of CEHTTF viewed the contents of MV-1's CashApp account and found that there were a total of 36 transactions between MV-1's account and the defendant's CashApp account.  The transactions began on February 18, 2024, and ended on September 22, 2024.  The transactions were typically between $10 to $35 and had notes linked to them which included the following:

  a. check gmail
  b. for snacks ? ☐ more photos otw .
  c. food , phone broke text on gmail
  d. lunch donation
  e. hmu on my number XXX XXX 5035 (*redaction added*)
  f. IG Project Impact Sports

During an interview with members of the CEHTTF, MV-1 reported that she had communicated with a person named "Joseph." MV-1 initially stated that "Joseph" was a same age minor. MV-1 later reported that "Joseph" was an adult male whom she had met near a Giant grocery store by her home. MV-1 further stated that "Joseph" had asked her to buy him ice cream and had sent her money on CashApp.  MV-1 stated that she met this adult male for the first time at the Giant

and then she communicated with him via Instagram and iMessage. MV-1 disclosed that she sent the adult male nude photographs of herself in these conversations. MV-1 gave members of CEHTTF an Apple iPhone that she had used during the time that she was communicating with the defendant. A forensic image of the Apple iPhone was extracted, and a report was generated for review.

On May 8, 2025, MV-1 was interviewed at Safe Shores located at the Child Advocacy Center in D.C. MV-1 disclosed that she had met an adult male at Giant near her home. The adult male had asked her to buy ice cream for him and asked for her CashApp account. MV-1 provided her CashApp to the adult male and bought ice cream for him. MV-1 reported that shortly after this she began communicating with the man via iMessage and after approximately a week he started asking her for sexual content.

MV-1 reported that the adult male would send her pictures of nude women and ask MV-1 to recreate the image for him. The adult male also requested videos of her "boobs, butt, and vagina" by sending specific emojis to her. MV-1 disclosed that the adult male had sent a photograph of his penis to her. MV-1 stated that she would send videos to the man and he would send money to her. MV-1 reported that the man became weird when he would tell her he was near her and wanted to link up. MV-1 stated that she stopped communicating with him after that happened.

MV-1 was shown an example of the suspected CashApp transactions between herself and the defendant. MV-1 explained that these were the transactions what she was talking about and identified an emoji on the transaction that was a request for a photograph of her breast. MV-1 also stated that the man's Instagram page was "Project Impact Sports" and believed that the telephone number on the transaction, ending in -5035, was the number of the adult man to whom she had sent sexual videos.

A member of the CEHTTF reviewed the contents of the Apple iPhone used by MV-1 to communicate with the defendant. The member found that the Apple iPhone had been linked to an

4

Apple iCloud using the email address xxxxxyanaa@gmail.com. The member found that the telephone number ending in -5035 had been blocked on the phone. The member also located a message from the phone number ending in -5035 to the Apple iPhone which stated, "Videos for money?" sent on April 25, 2025, at approximately 12:25 am.

The member also located 11 emails from Cash@square.com to an email used on the cellular phone between September 13, 2024, and September 21. 2024. The emails showed CashApp interactions with the CashApp user, "Project Impact Sports" / $Wissey. Two of the notifications stated, "hmu on my number XXX XXX 5035" (*redaction added*) and "for breakfast, text me on Instagram message won't work."

On May 14, 2025, a CEHTTF member presented an affidavit in support of a search warrant for the Google account of Devonne757@gmail.com to United States District Court of the District of Columbia (USDC DC) Magistrate Judge Michael Harvey. USDC Magistrate Judge Harvey reviewed the affidavit and authorized a search of the account (25-SC-801). Google was served with the authorized search warrant on May 15, 2025.

On May 20, 2025, a CEHTTF member reviewed the contents of the account and located numerous selfie style photographs of the defendant throughout the account. In addition, the account contained a contact named "Yana Ice Cream 🍦🎲 Shop" with a phone number ending in -5112. The contact also appeared to have a photograph of MV-1 assigned to the contact card. A CEHTTF member reviewed the email content of the Google account Devonne757@gmail.com and located twenty-two emails from YanaXXXXXXX@gmail.com to Devonne757@gmail.com from April 21, 2024 to July 15, 2024, and seven emails from xxxxxyanaa @gmail.com to Devonne757@gmail.com from September 23, 2024 to March 29, 2025.

On April 21, 2024, at 10:54 pm an email from YanaXXXXXXX@gmail.com to Devonne757@gmail.com contained five video files. A member of CEHTTF reviewed all the files

5

and found that they were close-up recordings of a female penetrating, manipulating, and opening her vagina with her fingers to masturbate.

On April 21, 2024, at 11:09 pm, an email had been sent from YanaXXXXXXX@gmail.com to Devonne757@gmail.com which contained two video files. The first file depicted a female wearing a black shirt with a silver in color butterfly necklace lifting their shirt to expose their breast to the camera. The second video depicted a close-up recording of a female penetrating her genitals with her fingers. On April 21, 2024, at 11:10 pm, an email was sent from YanaXXXXXXX@gmail.com to Devonne757@gmail.com which contained three video files. All three video files depicted a female penetrating her genitals with her fingers while masturbating.

On May 4, 2024, at 4:23 pm, an email was sent from YanaXXXXXXX@gmail.com to Devonne757@gmail.com which contained one video file. The file was reviewed and displayed the body of a completely nude female wearing jewelry around her abdomen, a red bracelet, and a silver in color butterfly necklace. The female appears to be in a bathroom and is observed penetrating her genitals with her fingers.

On May 4, 2024, at 4:27 pm, an email was sent from YanaXXXXXXX@gmail.com to Devonne757@gmail.com which contained one video file. The file displayed the body of a completely nude female wearing a jewelry around her abdomen, a red bracelet, and a silver in color butterfly necklace. The female exposes her buttocks to the camera and penetrates her vagina with her fingers. The female's face is partially visible in the video and resembles MV-1.

On May 4, 2024, at 4:30 pm, an email was sent from YanaXXXXXXX@gmail.com to Devonne757@gmail.com which contained one video file. The file depicted the body of a completely nude female wearing a jewelry around her abdomen, a red bracelet, and a silver in color butterfly necklace. The female appears to be in a bathroom and is observed penetrating her genitals with her fingers. The female's face is partially visible in the video and resembles MV-1.

A CEHTTF member reviewed the CashApp logs for MV-1 and found that the defendant had sent money to MV-1 with the following notes:

g. 4/21/2024 @ 6:20 pm: $32.62 "hope its not too mich , if it is send what u can."

h. 4/21/2024 @ 6:41 pm: $15.00 "for snacks ? ☐ more photos otw ."

i. 5/4/2024 @ 6:36 pm: $25.00 "Dinner"

A CEHTTF member reviewed the IP logs of Devonne757@gmail.com and found that the account had been logged into on May 4, 2024, at 5:27 pm, from the IP address of 173.73.209.88, which is the IP address that is currently registered to the defendant at his home in Washington, D.C. A CEHTTF member reviewed the rest of the emails between MV-1 from her YanaXXXXXXX@gmail.com account and the defendant at his Devonne757@gmail.com account, and found that seventeen of the other emails contained videos of a female engaged in sexual acts, sexual contacts, and/or lewd/lascivious displays of her genitals.

On March 28, 2025, at 9:46 pm, an email was sent from MV-1 at her xxxxxyanaa@gmail.com email account to the defendant at his Devonne757@gmail.com account, which contained one video file. The file depicted a completely nude female wearing a silver in color heart necklace sitting on the floor of a bathroom. The female is penetrating her genitals with her fingers and touches her breasts during the video.

On May 23, 2025, MV-1 met with a member of CEHTTF and looked at screenshots of the silver heart necklace, silver butterfly necklace, and the partially visible female face from the content distributed to the defendant at his Devonne757@gmail.com account. MV-1 reported that the jewelry belonged to her and that the partially visible female's face was hers.

The defendant was arrested on June 2, 2025, pursuant to a Criminal Complaint and Arrest Warrant issued out of District of Columbia on May 30, 2025. After his arrest, the defendant waived

7

his Miranda rights and gave a voluntary, custodial interview with the CEHTTF. During the interview, the defendant admitted that he sent money via CashApp to students that he encountered at school. The defendant further admitted that he gave money via CashApp to MV-1. The defendant claimed that he did not know MV-1's age, but he admitted that he received videos from her and that he had initially met her in person somewhere in Maryland.

## Applicable Legal Standard

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [the defendant] as required and the safety of any other person and the community," the Court shall order the defendant held pending trial. 18 U.S.C. § 3142(e). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019). As a threshold matter, the government must demonstrate by a preponderance of the evidence that a defendant is a flight risk, *see United States v. Anderson*, 177 F. Supp. 3d 458, 466 (D.D.C. 2016) (citing *United States v. Xulam*, 84 F.3d 441, 443 (D.C. Cir. 1996)), and by clear and convincing evidence that he is a danger to the community, *see* 18 U.S.C. § 3142(f). The government argues herein that the Defendant poses both a risk of flight and a danger to the community.

In determining whether any condition or combinations of conditions will assure the safety of the community, in light of any applicable presumptions, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). Here, because Receipt of Child Pornography is a crime of violence involving a minor victim, "[s]ubject to rebuttal by the [defendant], it shall be presumed that no condition or combination of conditions

8

will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(E). This presumption "operate[s] at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985); *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (observing that the presumptions in § 3142(e) "are rebutted when the defendant meets a burden of production by coming forward with some evidence that he will not flee or endanger the community if released"). But even if the defense produces credible evidence, the presumption retains evidentiary weight and is considered by the Court among the Section 3142(g) factors. *See, e.g.*, *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) ("Even when a defendant satisfies his burden of production, however, 'the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court.' . . . The presumption remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001))); *United States v. Ali*, 793 F. Supp. 2d 386, 388 n. 2 (D.D.C. 2011) ("[C]ircuits that have considered the issue require using the presumption as a factor even after the defendant has produced credible evidence.").

      In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992).

9

A pretrial detention hearing should not be used as a discovery device. *See Smith*, 79 F.3d at 1210; *Williams*, 798 F. Supp. at 36.

## Argument

For the reasons that follow, the United States submits that there are no conditions of release that will reasonably assure that the Defendant will not flee or pose a risk to the safety of any other person and the community.

### A. Nature and Circumstances of the Charged Offense

The Defendant's alleged conduct in this case is extremely harmful and dangerous to the community, as it involves the targeting and sexual exploitation of a vulnerable minor victim. This factor weighs heavily in favor of detention. "Child pornography depicts pictorial evidence of physical sex abuse against, and exploitation of children and the production and distribution of such contraband carries a multitude of harms." *United States v. Galarza*, No. 18-MJ-146 (RMM), 2019 WL 2028710, at *6 (D.D.C. May 8, 2019) (Howell, C.J.) (reversing magistrate court's release order); *United States v. Nickelson*, No. 18-MJ-102 (GMH), 2018 WL 4964506 (D.D.C. Oct. 15, 2018) (Howell, C.J.(same); *United States v. Blanchard*, No. 18-MJ-101 (GMH), 2018 WL 4964505, at *4 (D.D.C. Oct. 15, 2018) (Howell, C.J.) (same). Children captured in images and videos depicting their sexual abuse are significantly harmed at the time that the images and videos are created, and they are re-victimized and re-traumatized every time an individual, such as the Defendant, views and shares these images for his own sexual gratification and for the sexual gratification of others. *See Galarza*, 2019 WL 2028710, at *6 (noting that "'the perpetual nature of child pornography distribution on the Internet causes significant additional harm to victims,' [who] 'live with persistent concern over who has seen images of their sexual abuse' and how those images are being used to cause additional harm.'" (quoting U.S. SENT'G COMM'N, FEDERAL CHILD PORNOGRAPHY OFFENSES (Dec. 2012) at vii);

*Nickelson*, 2018 WL 4964506, at *4 (same); *Blanchard*, 2018 WL4964505, at *4 (same).

The defendant's conduct in this case was more serious than the typical case involving the receipt of child pornography. While the typical case involves scenarios in which an offender receives CSAM images produced by others, the evidence here shows that the defendant not only received several CSAM videos depicting the minor victim, but he also engaged in repeated on-line communications with the victim during which he asked the victim to produce the CSAM material for him, often in exchange for money.

The seriousness of the charged offense is also reflected by Congress's judgment that those charged with receiving child pornography should be presumed detained pending trial, *see* 18 U.S.C.§ 3142(e)(3)(E) and are subject to a five-year mandatory minimum term of imprisonment upon conviction. *See* 18 U.S.C. § 2252(b)(1). Indeed the defendant's conduct appears to have gone beyond the mere receipt of child pornography and may more accurately be characterized as having produced the child pornography. Such conduct is even more serious and is subject to a mandatory fifteen year minimum term of imprisonment. *See* 18 U.S.C. § 2251(a)(1). Accordingly, the nature and circumstances of the defendant's offense weigh heavily in favor of detention.

### B. The Weight of the Evidence Against the Defendant

The second factor to be considered, the weight of the evidence, also weighs heavily in favor of detention. The evidence against the defendant is strong. As detailed above, the defendant received child pornography from MV-1 on multiple occasions and he was repeatedly in communication with her over the course of several weeks as he directed her to produce CSAM videos for him, often in exchange for money. The evidence includes the minor victim's statement, as well as CashApp transactions and email communications between the defendant and MV-1. In addition, the defendant admitted during his post-arrest custodial interview with law enforcement that he had received sexually explicit images and videos from MV-1, although he denied knowing that she was a minor.

11

In light of the defendant's decades of experience interacting with teenagers, while he worked as a teacher and youth athletics coach, it is difficult to believe that he did not know that MV-1 was a minor. The defendant admitted that he met MV-1 in person before he began communicating with her and paying her to produce and send CSAM to him. Certainly, a teacher and youth athletic coach who has spend years working with teens would have been able to tell that MV-1, who as 13 years old when she met the defendant, was a minor.

While some judges in this Court have indicated that this factor should be given less weight, in *United States v. Blackson*, following a thorough review of the text of Section 3142 and decisions analyzing this factor, then–Chief Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." No. 23-CR-25 (BAH), 2023 WL 1778194, at *8 (D.D.C. Feb. 6, 2023) (Howell, C.J.). Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* at *10. In an unpublished opinion, the D.C. Circuit affirmed then–Chief Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). The Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149–150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang*; this factor should be given no less weight than any other factor.

Indeed, "if the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 WL 1778194, at *10. This is such a case, and the Defendant should be detained pending trial.

C. **The History and Characteristics of the Defendant**

Although the defendant has no known criminal convictions, his record reflects that he has been arrested multiple times. In addition, his conduct in this case was extremely serious and reflects a persistent interest in the sexual exploitation of minors. The defendant not only targeted and communicated with a vulnerable minor victim on-line and repeatedly received child pornography produced by this child, but he also directed the victim to produce the material and paid her to produce the material for him. In addition, the defendant's employment history indicates that he has gone from one school or youth program to another and has been repeatedly terminated from his employment after engaging in inappropriate sexual behavior with others at the workplace. This factor also weighs in favor of detention.

### D.   The Nature and Seriousness of the Danger to any Person or the Community

The facts and evidence in this case establish that the defendant poses a grave danger to the community. As discussed above, the production and receipt of child pornography results in severe mental, emotional, and physical trauma to the minors who are victimized by offenders such as the defendant, who seek to achieve sexual gratification by sexually exploiting these children. Through his actions, the defendant furthers the demand for new material depicting the sexual exploitation of m. It is precisely "[t]hese significant harms and dangers [that] animated the Congress to create the statutory presumption of detention in these cases." *Galarza*, 2019 WL 2028710, at *7; *Nickelson*, 2018 WL 4964506, at *5 (noting also Congress's creation of significant statutory mandatory minimum penalties); *Blanchard*, 2018 WL 4964505, at *4 (same). The totality of his conduct demonstrates that he poses an unmitigable danger to the community. There is no condition or combination of conditions that could reasonably assure community safety were the defendant to be released. This Court should order that he remain detained pending trial.

### Conclusion

For the foregoing reasons, the government respectfully requests that this Court order that Defendant Devonne Brown remain detained pending trial.

                                        Respectfully submitted,

                                        Jeanine Ferris Pirro
                                        Interim United States Attorney

Dated: June 3, 2025          By:    /s/ *Karen Shinskie*
                                        Karen L. Shinskie
                                        D.C. Bar No. 1023004
                                        Assistant United States Attorney
                                        United States Attorney's Office for the
                                        District of Columbia
                                        601 D Street, N.W.
                                        Washington, D.C. 20530
                                        (202) 730-6878
                                        karen.shinskie@usdoj.gov