UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | 25-cr-173 (RBW) |
| | ) | |
| **DEVONNE BROWN** | ) | |

**DEFENDANT'S OPPOSITION TO THE GOVERNMENT'S REQUEST TO OVERTURN THE MAGISTRATE COURT'S RELEASE ORDER**

Devonne Brown, by and through counsel, opposes the government's request to overturn the release order issued by the Magistrate Judge on June 13, 2025, pursuant to the Bail Reform Act, 18 U.S.C. § 3142.

After two lengthy detention hearings, the Honorable Zia M. Faruqui determined that the defense overcame the presumption for detention and that the government had not met its burden of persuasion to detain Mr. Brown pre-trial. The magistrate court ordered the strictest conditions of release possible, including:

1) Home Incarceration;

2) Must reside at the home of and in the third-party custody of his mother and sister in Norfolk, VA.

3) Participate in courtesy supervision of the Eastern District of Virginia pre-trial services department, which includes GPS and home visits.

4) Not possess a firearm, destructive device, or other dangerous weapon;

5) Not use or possess any controlled substance.

6) Not possess a cell phone or any other electronic device. Third party custodian phone must have password and be kept in lock box overnight. Any phone calls made to pre-trial services and counsel must be in presence of third-party custodian.

    7) No unapproved visitors.

ECF No. 15. Immediately after the hearing held on June 13, 2025, the government appealed the order of the magistrate court as it has consistently and automatically done in every case despite the magistrate courts' thorough and thoughtful consideration of the Bail Reform Act.

For the reasons discussed in this opposition as well as the reasons discussed on the record before the magistrate court, the decision of the magistrate court should be affirmed and Mr. Brown should be released.

## STATEMENT OF FACTS

### a. Government Allegations

The government charges that Mr. Brown met an individual who was a minor and for a period of time thereafter used an application on his phone to send her cash in exchange for illicit photographs and videos. There are no allegations or evidence that Mr. Brown distributed these materials or that he had a collection of child pornography outside of these interactions. There are no allegations that he touched this minor. The government implies in its appeal that Mr. Brown tried to meet up with this minor and therefore he had intentions on having a physical relationship. However, the messages exchanged were about exchanging cash – not about having a physical relationship and there were no previous messages from him to her indicating he wanted a physical relationship.

The government also inappropriately discusses uncharged hearsay discussions that the defense is not privy to regarding complaints at his place of employment and

complaints from a prior *ex-wife*. None of these hearsay discussions are relevant and this Court has consistently said as much regarding uncharged or acquitted conduct.

After Mr. Brown was arrested, he was cooperative and agreed to speak to law enforcement and gave consent to search his phone.

### b. Mr. Brown's Personal History

Mr. Brown is a 56-year-old man with zero prior convictions. He has consistently maintained employment as a schoolteacher and was living alone and renting a townhouse in Northeast, D.C. prior to his arrest. Mr. Brown has a daughter, who is an adult and who is in medical school in Fort Smith, Arkansas. He has another ex-wife, the mother of their daughter, who is extremely supportive of Mr. Brown – despite being aware of these allegations.

Mr. Brown also has other supportive family, his mother who is elderly but not "infirm" as the government tries to suggest. He also has a brother in Texas, and a sister in Norfolk, VA, all of whom did not hesitate to come to Mr. Brown's aid upon hearing of these allegations. Mr. Brown's cousin wrote a letter to the Court describing him as a "pillar to the family," and a man of integrity. *See* Exhibit 1, Letter from Ms. Robinson. Mr. Brown's childhood friend also wanted to share with the Court his opinion of Mr. Brown's strong character that he has observed all of these years. *See* Exhibit 2, Letter from Mr. Scott.

### c. Evidence Presented at Detention Hearing

In the government's appeal, it hand-selected a few pieces of testimony without capturing crucial parts that assured the Court that the third-party custodians would

be able to assist in *reasonably* assuring the safety of the community. The government forgets that the Bail Reform Act does not place the entire burden on third-party custodians but rather they are a tool to assist in conjunction with other stringent conditions.

At the first detention hearing on June 4, 2025, the Court heard testimony from Mr. Brown's mother, Judith Woody, who is 79 years old and resides in Chesapeake, VA in a two-bedroom townhome. She testified that her son could reside with her in the home and that she would "do whatever the [judge] tells me to do." She explained that while she does have the assistance of a nurse every day to make sure she takes her medications, she remains active, walks every day, and gets her own groceries. Again, the Bail Reform Act does not require a third-party custodian to be under a certain age or to be a certain physical stature. Government counsel, who is not a medical doctor to undersigned counsel's knowledge, is incorrect that Ms. Woody is not physically and mentally capable to serve in this role. Ms. Woody clearly and strongly articulated that she would take this role seriously and not allow her son to use her phone. There is also no requirement that a third-party custodian be proficient in technology or have experience in searching for contraband. She testified she does not have a laptop or any other electronic devices.

At the end of the first detention hearing after the Court was satisfied that Ms. Woody was a suitable third-party custodian, the Court continued the hearing *only* so that the government could determine if there was anything else of concern on Mr.

Brown's phone. The Court explained that it would consider release if there was no evidence of large collections of CSAM materials.

On June 13, 2025, at the continued detention hearing, the government represented that there was not CSAM found on the phone at this point and explained that only a partial extraction was completed.

Counsel, on behalf of Mr. Brown, presented an additional third-party custodian who could assist Ms. Woody. Michelle Woody Williams, Mr. Brown's older sister, testified that she also resides in Norfolk, VA, and works very close to her mother's residence, at Harris Teeter's. She works from 2:45am-11:30am and is able to go to her mother's home every day after work to conduct searches of the residence and relieve her mother whenever she needs to go to a medical appointment or to get groceries. She can also help her mom set up the lock box so that every night that phone is locked away. Ms. Woody Williams testified that she has adult children and that she is free to carry out these responsibilities. She also testified that in all of the years she has known her brother, she never observed any issues with him around any minors. Lastly, she testified that she understood her responsibilities as a third-party custodian and would take an oath to report any violations. Pre-trial services found Ms. Woody Williams to be eligible to serve in this role.

Throughout both witness's testimonies, Mr. Brown was present and heard the stringent conditions that would be in place as well as the seriousness of what could occur to his family if they were not to take their roles seriously.

The government misunderstands the biggest purpose of third-party custodians and that is that they serve as a deterrence factor to defendants who know that if they violate any condition they are not only putting themselves at risk but also their family members. This, in addition to other conditions, explains why our district has such a high rate of success on pre-trial release. So, third party custodians are not "jailers," they are influential people in defendants' lives whose mere presence makes them better and makes them more likely to succeed.

## ARGUMENT

### THE COURT SHOULD DENY THE GOVERNMENT'S MOTION TO OVERTURN THE MAGISTRATE COURT'S RELEASE ORDER

**A. The Applicable Legal Standard**

The Bail Reform Act requires courts to release defendants who are pending trial on personal recognizance or on an unsecured appearance bond unless the government has presented clear and convincing evidence that there are no conditions that will "reasonably assure the appearance of the person as required or . . . the safety of any other person or the community." 18 U.S.C. §§ 3142(b), 3142(f)(2)(B). In other words, "the default position of the law . . . is that a defendant should be release pending trial." *United States v. Taylor*, 289 F. Supp. 3d 55, 62 (D.D.C. 2018) (quoting *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010)).

Defendants who are charged with certain specified offenses are subject to a rebuttable presumption that no condition, or combination of conditions, can assure the defendant's appearance or ensure the safety of the community, *see* 18 U.S.C. §

3142(e). Even if such a presumption exists, the defense only has to meet a burden of <u>production</u> and the burden of persuasion remains with the government throughout the proceeding. *United States v. Taylor*, 289 F.Supp.3d 55, 63 (D.D.C. 2018) (emphasis added) (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). Here, the defense clearly met its burden of production and the government was unable to meet its burden of persuasion.

In determining whether the government has met its burden of persuasion by clear and convincing evidence proving that no combination of conditions can protect a person or the community, or by a preponderance of evidence that no combination of conditions can assure the defendant's appearance, courts consider four factors: (1) the nature and seriousness of the offense charged; (2) the weight of the evidence; (3) the defendant's character, including his physical and mental condition, family and community ties, past conduct, drug and alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger posed to any person by release. 18 U.S.C. § 3142(g).

Mr. Brown agrees that this Court has the authority to review the Magistrate Judge's release order pursuant to 18 U.S.C. § 3145(a)(1). The Court interprets the Bail Reform Act and any terms therein *de novo*. *United States v. Hanson*, 613 F. Supp. 2d 85, 88 (D.D.C. 2009).

> B. <u>**The Magistrate Court's Determinations Should be Affirmed Because the Court Properly Assessed the 3142 factors**</u>
>
> i. **The Nature and Circumstances of the Offenses Charged**

The offense charged is very serious. The magistrate court acknowledged this. However, the Bail Reform Act does not say that if a defendant is charged with a crime against a minor that they cannot be released. Rather, the law mandates a more stringent test to be satisfied but nonetheless still provides a mechanism for release. The Magistrate Judge found that the defense had rebutted the presumption for detention and that there were conditions that could protect the community despite the government's allegations. In fact, the Court fashioned essentially a prison like situation in his own home. There are no more stringent conditions that could be fashioned. The Court even went on to explain that at the D.C. Jail, unfortunately getting contraband (including phones) is normal and would not protect the community anymore in this type of case.

Even despite the serious nature of the charge, there must be "an articulable threat posed by the defendant to an individual or the community" to justify detention. *United States v. Munchel*, 991 F. 3d 1273, 1282 (D.C. Cir. 2021). The government has failed to identify why Mr. Brown specifically poses a threat to the community under the most strict conditions possible. The government relied on the fact that Mr. Brown messaged the minor about meeting up in person as the reason he could not be trusted in the community even under home incarceration and strict conditions. Firstly, the messages were about him giving her cash and there were no previous messages about wanting to have a physical relationship with her. Secondly, even if there was a more sinister intention, Mr. Brown would not have access to minors being on home incarceration, a gps location device, and two third party-custodians. That kind of

monitoring would make it extremely unlikely for Mr. Brown to have access to a minor. The Court does not have to guarantee the safety of the community by eliminating any small possibility that could occur. Rather, the Bail Reform Act specifically requires *reasonable* assurance. That logically follows in serious cases where the nature of the offense causes great pause but where there still is a mechanism for release. Under the government's approach, that is contrary to the Bail Reform Act, nobody charged with this offense could be released.

### ii. The Weight of the Evidence Against the Defendant

In determining whether conditions of release can ensure the safety of others, "[t]he weight of the evidence is the least important of the factors and the bail statute neither requires nor permits a pretrial determination of guilt." *United States v. Gebro*, 948 F.2d 1118, 1121-22 (9th Cir. 1991) (citing *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986)); *accord United States v. Jones*, 566 F. Supp. 2d 288, 292 (D.NY 2008); *United States v. Taylor*, 289 F. Supp. 3d 55, 66 (D.D.C. 2018) ('Even overwhelming evidence of guilt would not, alone, meet [the clear and convincing test]').

### C. A Review of Past Cases Also Show Release is Warranted

The government attempts to distinguish a prior case that clearly favors release in the instant matter. In *United States v. Jonathan Willis*, 22-mj-122 (RMM), former Chief Judge Howell affirmed the release order of the magistrate court of a defendant charged with Coercion and Enticement of a Minor. Very similarly, Mr. Willis was accused of sending money to a 14-year-old minor in exchange for illicit materials. Mr.

Willis also messaged that minor about potentially meeting in person. The message exchange between Mr. Willis and the minor was even more aggravating than the instant case because despite the minor telling him she was a minor, Mr. Willis continued despite the minor messaging things like "I can't tonight is a school night," or "as soon as my mom goes to her room." Notably, a search of his phone post arrest showed videos of prepubescent minors, which is something absent in this case.

Despite the more aggravating allegations, the Court in *Willis* fashioned conditions of release that did protect the community. Mr. Willis resided in Michigan under the custody of his parents and while undergoing online therapy. Mr. Willis had no violations of his pre-trial release.

The government strains credulity by arguing the magistrate court did not properly consider the differences between the two cases. First, the government tries to distinguish the nature and circumstances even though the *Willis* case has more aggravating circumstances. The length of the communications is of little relevance when the nature of the communications is far more aggravating. Mr. Willis continuously talked about wanting to have a physical sexual relationship with the minor victim whereas those types of messages are nonexistent in the instant case.

Secondly, the magistrate court in this case did not continue the matter so that undersigned counsel could "replicate" the *Willis* conditions. Rather, the magistrate court continued the matter to ensure that there was no more aggravating evidence on Mr. Brown's phone, such as the type found on Mr. Willis's phone. The magistrate

court agreed that the *Willis* conditions were more stringent but also explained that the allegations in *Willis* were more aggravating.

Nonetheless, the proposed conditions in the *Willis* case are not too dissimilar to the proposed plan here. The only real difference is that Mr. Brown does not have a plan for treatment while on pre-trial release. The logistical and financial difficulties of being on treatment while on home incarceration with no internet access are too great for most people to manage. In the *Willis* case, the defense arranged for a psychologist to be ready and available to conduct an evaluation and provide counseling by using a special online platform that would allow Mr. Willis to go to his attorney's office to be supervised while on this platform. However, the fact of the matter is that it is the routine practice of the Office of the Federal Public Defender to hire psychologists to do exactly that while the case is pending. So, while this is not something that would be done immediately, it would be done in short order.[1] If the Court deems appropriate, it can make "evaluation and/or treatment" an added condition of pre-trial release.

There are also other prior cases where courts have released defendants in cases involving sexual exploitation of minors:

- *U.S. v. Daniel Johnston*, 20-cr-83 (JEB): defendant downloaded on peer-to-peer software CSAM depicting 5- and 6-year-olds. Mr. Johnston did well on pre-trial release.

---

[1] Hiring an expert and arranging such a process takes more time than with a private attorney because of our funds approval process that takes an average of 30 days to complete. Mr. Brown should not be disadvantaged for having a public defender rather than retained counsel.

- *U.S. v. Sharp*, 22-cr-174 (TNM): distribution of child pornography case with co-defendants who all shared CSAM materials together and discussed the contents in graphic fashion. The defendant was only 19 years old. Mr. Sharp also did well on pre-trial release.
- *U.S. vs. Gary Lee Peska*, 19-cr-350 (RJL): Receipt of Child Pornography case. Defendant was government employee at the U.S. Capitol and downloaded videos to view while at work. Mr. Peska also did well on pre-trial release.

## Conclusion

For all of the above reasons, the release order issued by the magistrate court should be affirmed and Mr. Brown should be released pursuant to the stringent conditions outlined in ECF No. 15.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____
Maria N. Jacob
Assistant Federal Public Defender
625 Indiana Avenue, NW
Washington, DC 20004
(202) 208-7500
Maria_Jacob@fd.org